ATTORNEY GENERAL *ex rel* DEPARTMENT OF ENVIRONMENTAL
QUALITY v BULK PETROLEUM CORPORATION

Docket No. 264207. Submitted February 7, 2007, at Lansing. Decided
September 18, 2007, at 9:05 a.m.

The Attorney General, on the relation of the Department of Environmental Quality (DEQ), brought an action in the Ingham
Circuit Court against Bulk Petroleum Corporation and others,
requesting the court to order the defendants to comply with a
unilateral administrative order (UAO) issued by the Department
of Natural Resources (DNR) before the DNR's environmental
functions were transferred to the DEQ, and with the provisions of
the Natural Resources and Environmental Protection Act
(NREPA), MCL 324.21301a *et seq.*, with regard to leaking petroleum tanks on the defendants' property. The defendants had failed
to comply with the UAO and had failed to submit a final assessment report (FAR) detailing their progress in remediating the site
as required by the NREPA. The DEQ had imposed a penalty for
the failure to submit the FAR, but it had not been paid. The
plaintiff moved for summary disposition, and the defendants
stipulated that they were liable for violations of the UAO and the
NREPA. The plaintiff sought penalties of $3,364,400, and the
court, Joyce A. Draganchuk, J., imposed a $1,090,000 penalty for
the defendants' failure to submit a statutorily complete FAR and
stated that the court would continue to monitor the defendants'
actions and make adjustments to the penalty. The defendants then
submitted a statutorily complete FAR and paid the penalty. Approximately two years later, the plaintiff sought the remainder of
the $3,364,400 penalty, and the defendants sought to reduce the
original penalty they had paid and a return of the claimed
overpayment. The court denied the defendants' motion and
granted the plaintiff's motion and awarded an additional
$1,418,900 in penalties. The court also held that the defendants
had waived any statute of limitations defense by stipulating the
entry of an order of summary disposition on the issue of liability.
The defendants appealed.

The Court of Appeals *held*:

1. The court did not err in imposing the penalties. The court had the authority under MCL 324.21323(1)(d) to impose the penalties. Although the court erred in assessing the penalties under MCL 324.21313a(1), the order assessing the penalties must be affirmed because the same penalties were authorized under MCL 324.21323(1).

2. There was sufficient evidence of the defendants' violation and of the penalty sought for the violation. MCL 324.21323(1)(d) does not impose on the plaintiff the burden of proof to support the imposition of the penalties.

3. The trial court considered the factors required by MCL 324.21323(1)(d) when imposing the original penalties and the additional penalties. The statute does not explicitly require the court to elaborate on its reasoning.

4. The defendants' failure to raise their statute of limitations defense in response to the plaintiffs' motion for summary disposition constituted a waiver of that defense. The doctrine of continuing wrongs does not apply in this matter to prevent the plaintiff from asserting that the defendants had waived their statute of limitations defense.

Affirmed.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Polly A. Synk*, Assistant Attorney General, for the plaintiff.

*Miller Johnson* (by *James S. Brady* and *J. Michael Smith*) for the defendants.

Before: WHITBECK, C.J., and BANDSTRA and SCHUETTE, JJ.

PER CURIAM. Defendants appeal as of right the trial court's order denying their motion for the reduction of a $1,090,000 penalty and granting plaintiff's motion for additional penalties of $1,418,900. We affirm.

I. FACTS

In 1986, defendants acquired the former Bulk Station 3612, a retail gas station, located at 2020 North

US-23 in Hartland, Michigan, from Chevron, Inc. The property had five underground storage tanks that leaked petroleum from approximately 1986 to 1999. The problem was not corrected, and in 1993 the Department of Natural Resources (DNR), the predecessor of the Department of Environment Quality (DEQ),[1] issued a unilateral administrative order (UAO). The UAO required defendants to implement free product removal, install a groundwater treatment system, provide monthly reports to the DEQ, and provide the DEQ with copies of their contracts with qualified consultants. Defendants failed to comply with the requirements of the UAO, and they also failed to submit a final assessment report (FAR) detailing their progress in remediating the site as required by § 21311a, MCL 324.21311a, of part 213 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.21301a *et seq.*

On August 10, 2000, the DEQ imposed a $29,400 penalty on defendants for failing to submit a statutorily complete FAR, but defendants did not pay the penalty. In October 2000, defendants began excavating the contaminated soil from the site. On December 17, 2001, the Attorney General, on the relation of the DEQ, filed a complaint against defendants in the circuit court requesting that the court order defendants to comply with the UAO and the NREPA. Plaintiff moved for summary disposition, and on July 8, 2003, defendants stipulated that they were liable for violations of the UAO and the NREPA. Plaintiff then sought penalties in the amount of $3,364,400.

Defendants' consultant had submitted a FAR in October 2002; however, the DEQ determined that the

---

[1] The DNR's environmental functions were transferred to the DEQ by Executive Reorganization Order 1995-18, effective October 1, 1995. MCL 324.99903.

FAR was statutorily incomplete and instructed defendants to correct the deficiencies in a timely manner. Defendants hired a new consultant, Northern Environmental Technologies, Inc., to prepare a new FAR.

At a hearing on August 5, 2003, the trial court imposed a $1,090,000 penalty on defendants for their failure to submit a statutorily complete FAR. The trial court also stated that it would monitor defendants' actions and make "any adjustments to penalties for the violations as alleged in the Motion for Summary Disposition." On October 30, 2003, defendants submitted a statutorily complete FAR to the DEQ. The DEQ then submitted a letter to defendants commenting on the FAR and requesting modifications. Defendants paid the $1,090,000 penalty on December 9, 2003.

On January 21, 2005, the DEQ moved for additional penalties, seeking the remainder of the $3,364,400 originally asked for, and defendants brought a motion to reduce the original $1,090,000 penalty. At a March 8, 2005, hearing, the trial court denied defendants' motion and granted plaintiff's motion for additional penalties in the amount of $1,418,900, taking into account the seriousness of defendants' violations and defendants' noncompliance. The trial court also ruled that defendants waived a statute of limitations defense to the penalties by stipulating the entry of an order of summary disposition on the issue of liability on July 8, 2003. Defendants now appeal.

## II. IMPOSITION OF THE PENALTIES

Defendants argue that the trial court erred in imposing $1,090,000 in penalties at the August 5, 2003, hearing and $1,418,900 in penalties at the March 8, 2005, hearing. We disagree.

### A. STANDARD OF REVIEW

The interpretation and application of a statute constitutes a question of law that this Court reviews de novo. *Eggleston v Bio-Medical Applications of Detroit, Inc,* 468 Mich 29, 32; 658 NW2d 139 (2003).

### B. ANALYSIS

#### 1. THE AUGUST 5, 2003, PENALTIES

On August 5, 2003, the trial court assessed $1,090,000 in penalties against defendants for their failure to submit a statutorily complete FAR. Defendants challenge the trial court's imposition of those penalties on three grounds. First, defendants assert that they should have been required to pay only the $29,400 in penalties imposed by the DEQ for their failure to submit a FAR because the trial court had no authority under MCL 324.21313a(1) to impose a higher penalty. Second, defendants contend that plaintiff failed to meet his evidentiary burden to support the imposition of the penalties. Finally, defendants argue that the trial court erred in failing to consider the seriousness of defendants' violations and any good-faith effort by defendants to comply with the NREPA when imposing the penalties. We disagree.

#### a. THE TRIAL COURT'S AUTHORITY TO IMPOSE THE PENALTIES

Section 21311a of part 213 of the NREPA provides that "[w]ithin 365 days after a release has been discovered, a consultant retained by an owner or operator shall complete a final assessment report [FAR] that includes a corrective action plan developed under section 21309a and submit the report to the [DEQ]." MCL 324.21311a(1).

Further, if a FAR is not completed within the statutory time frame, then the DEQ may impose graduated penalties according to the following schedule:

(a) Not more than $100.00 per day for the first 7 days that the report is late.

(b) Not more than $500.00 per day for days 8 through 14 that the report is late.

(c) Not more than $1,000.00 per day for each day beyond day 14 that the report is late. [MCL 324.21313a(1).]

Additionally, § 21323(1)(d) of part 213 authorizes the Attorney General to commence a civil action on behalf of the DEQ and to seek several remedies for noncompliance, including

[a] civil fine of not more than $10,000.00 for each underground storage tank system for each day of noncompliance with a requirement of [part 213] or a rule promulgated under [part 213]. A fine imposed under this subdivision shall be based upon the seriousness of the violation and any good faith efforts by the violator to comply with the part or rule. [MCL 324.21323(1)(d).]

Defendants contend that because the plain language of MCL 324.21313a(1) only authorizes the DEQ to impose penalties for an untimely FAR, the trial court was without authority to assess the $1,090,000 penalties against defendants. We disagree.

As an initial matter, we note that defendants failed to raise this argument below. Therefore, it is not properly preserved for appellate review. *Brown v Loveman*, 260 Mich App 576, 599; 680 NW2d 432 (2004) (noting that, as a general rule, this Court does not review issues that are not raised and decided by the trial court). Nonetheless, we will address this unpreserved issue because it presents a question of law and the necessary facts are before us, and because addressing it is necessary for a

proper determination of this case. *Heydon v MediaOne of Southeast Michigan, Inc*, 275 Mich App 267, 278; 739 NW2d 373 (2007).

Turning now to the merits of defendants' argument, while defendants technically are correct that under the plain language of MCL 324.21313a(1) the trial court did not have the authority to impose penalties for defendants' untimely FAR, the trial court had the authority under MCL 324.21323(1)(d) to impose penalties of up to "$10,000.00 for each underground storage tank system for each day of noncompliance with a requirement of [part 213] or a rule promulgated under [part 213]." It is undisputed that defendants were required to submit a FAR no later than October 1, 1996, and that a statutorily complete FAR was not submitted until October 30, 2003. An untimely FAR is a violation of "a rule promulgated under [part 213]." Therefore, we conclude that the trial court had the authority under MCL 324.21323(1) to impose the $1,090,000 in penalties for defendants' untimely FAR. And although the trial court erred in assessing penalties under MCL 324.21313a(1), because it was authorized to assess those same penalties under MCL 324.21323(1), we must affirm the trial court's order. *Hess v Cannon Twp*, 265 Mich App 582, 596; 696 NW2d 742 (2005) (" 'A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.' " [Citation omitted.]).

### b. PLAINTIFF'S EVIDENTIARY BURDEN

Defendants also argue that plaintiff failed to meet his evidentiary burden to justify the trial court's imposition of the $1,090,000 penalty at the August 5, 2003, hearing because plaintiff failed to present any evidence or testimony at the penalty hearing. Plaintiff counters that he did not need to produce evidence at the hearings

because defendants had already stipulated the violations underlying the penalty when plaintiff moved for summary disposition on the issue of defendants' liability. We agree with plaintiff.

MCL 324.21323(1)(d) does not impose a burden of proof on plaintiff to support the imposition of penalties. Instead, it provides for the imposition of penalties when there is "noncompliance with a requirement of [part 213] or a rule promulgated under [part 213]." Again, MCL 324.21311a (a rule promulgated under part 213) requires submission of a FAR "[w]ithin 365 days after a release has been discovered . . . ." Here, defendants stipulated in response to the motion for summary disposition that they failed to submit a statutorily complete FAR within the time required, and at the penalty hearing plaintiff provided the trial court with a penalty summary that outlined the penalty sought for the FAR violation. Therefore, because there was sufficient evidence of defendants' violation and the penalty sought by plaintiff for the violation, we conclude that defendants' argument is without merit.

### c. THE TRIAL COURT'S CONSIDERATION OF THE STATUTORY CRITERIA

Defendants further argue that the penalties imposed on August 5, 2003, must be reversed because the trial court failed to consider "the seriousness of the violation and any good faith efforts by the violator to comply," as required under MCL 324.21323(1)(d). Again, we disagree.

It is undisputed that from 1986 through 1993 there was a series of releases of petroleum from the underground storage tanks on defendants' property. And, again, defendants did not dispute that they failed to submit a statutorily complete FAR. Indeed, defendants'

environmental consultant testified that defendants had still not submitted a statutorily complete FAR at the time of the penalty hearing. Thus, evidence of the seriousness of defendants' ongoing violations was before the trial court. Further, the record shows that the trial court specifically noted defendants' continued noncompliance before reaching its decision to impose penalties for the untimely FAR. Therefore, we are satisfied that the trial court considered the appropriate factors when it imposed the August 5, 2003, penalties.

### 2. THE MARCH 8, 2005, PENALTIES

Next, defendants challenge the trial court's imposition of additional penalties of $1,418,900 at the March 8, 2005, hearing. Again, defendants assert that plaintiff failed to meet the evidentiary burden and that the trial court failed to consider the seriousness of defendants' violations and defendants' efforts to comply before imposing the penalties. We disagree.

### a. THE TRIAL COURT'S CONSIDERATION OF THE STATUTORY CRITERIA

In imposing additional penalties, the trial explicitly stated that it was "taking into account the seriousness of the violations, the defendants['] noncompliance up to October 30th, 2003, and the defendants['] compliance since that time." However, despite this explicit statement, defendants argue that the trial court was required to articulate the specific evidence it relied on to support its imposition of penalties. We disagree.

MCL 324.21323(1)(d) requires the following: "A fine imposed under this subdivision shall be based upon the seriousness of the violation and any good faith efforts by the violator to comply with the part or rule." The statute does not explicitly require the court to elaborate

on its reasoning for imposing a penalty; rather, it requires the trial court to consider the seriousness of the violation and any good-faith efforts. The record shows that the trial court took the appropriate factors into consideration at the hearing when imposing additional penalties. The trial court identified defendants' violations as both serious and ongoing. Therefore, the trial court did not err in imposing the additional penalties under MCL 324.21323(1)(d) for violations of the UAO.

### b. PLAINTIFF'S EVIDENTIARY BURDEN

Again, defendants argue that plaintiff failed to meet the evidentiary burden to justify the trial court's imposition of the $1,418,900 at the March 8, 2005, hearing because plaintiff failed to present any evidence or testimony at the penalty hearing. However, as previously discussed, MCL 324.21323(1)(d) does not impose a burden of proof on plaintiff to support the imposition of penalties. Further, as was the case at the August 5, 2003, hearing, defendants stipulated that they had violated the UAO, and the DEQ provided the trial court with a penalty summary that outlined the violations and the corresponding penalties sought. Accordingly, plaintiff presented sufficient evidence to support the imposition of the penalties in this case.[2]

### III. STATUTE OF LIMITATIONS

Defendants also argue that at least some of the additional penalties imposed at the March 8, 2005, hearing were barred by the two-year limitations period

---

[2] We note that at both hearings, defendants had the opportunity and, in fact, did present evidence and testimony regarding the seriousness of their violations and their efforts toward compliance.

set forth in MCL 600.5809(2). Plaintiff counters that defendants waived the statute of limitations defense by not raising it at the hearing on the motion for summary disposition or at the first penalty hearing. But even if the defense was not waived, under MCL 600.5813, a six-year limitations period applies to this case. We agree in part with plaintiff.

### A. STANDARD OF REVIEW

" ' "[A]bsent disputed questions of fact, whether a cause of action is barred by a statute of limitations is a question of law that this Court . . . reviews de novo." ' " *Citizens Ins Co v Scholz*, 268 Mich App 659, 662; 709 NW2d 164 (2005) (citations omitted).

### B. ANALYSIS

Plaintiff contends that defendants' failure to raise their statute of limitations defense in response to plaintiff's motion for summary disposition constituted a waiver of that defense. We agree.

Affirmative defenses, such as a statute of limitations defense, must be raised in a party's first responsive pleading or by motion filed not later than this responsive pleading. MCR 2.111(F)(2) and (3); see also *VandenBerg v VandenBerg*, 253 Mich App 658, 660; 660 NW2d 341 (2002). Additionally, under MCR 2.111(F)(3), affirmative defenses are to be listed under a separate heading and must include the facts constituting such a defense. The party asserting an affirmative defense has the burden of presenting evidence to support it. *Palenkas v Beaumont Hosp*, 432 Mich 527, 548, 550; 443 NW2d 354 (1989). Here, in response to plaintiff's complaint, defendants filed an answer in which they simply asserted "Statute of Limitations" as an affirmative

defense. Defendants failed to provide any facts support-
ing such an affirmative defense or cite a specific,
applicable statute of limitations. MCR 2.111(F)(2)
states that, with exceptions not relevant to this case, all
defenses *not properly asserted in a responsive pleading
are waived*. Therefore, the adequacy of defendants'
statement of their affirmative defense is questionable.

Further, a statute of limitations defense is an affir-
mative defense that may be waived. *People v Everard*,
225 Mich App 455, 461; 571 NW2d 536 (1997), citing
*Palenkas, supra* at 551. Such a waiver may " ' "be
shown by a course of acts and conduct, and in some
cases will be implied therefrom." ' " *Burton v Reed City
Hosp Corp*, 471 Mich 745, 754 n 4; 691 NW2d 424
(2005) (citations omitted). In *Palenkas*, our Supreme
Court concluded that the defendant hospital had waived
a statute of limitations defense because "after neglect-
ing to include factual allegations in its answer, [the
defendant] continued to ignore its burden of produc-
tion" by not submitting "any evidence on the statute of
limitations issue in its case in chief." *Palenkas, supra* at
550-551.

We conclude that defendants' failure to raise their
statute of limitations defense in response to plaintiff's
motion for summary disposition constituted a waiver of
that defense. Even if defendants had properly asserted
a statute of limitations defense in their responsive
pleading, they failed to reiterate such a defense in
response to plaintiff's motion for summary disposition.
In the motion for summary disposition, plaintiff as-
serted that no genuine issue of material fact existed
with regard to defendants' liability for the alleged
statutory violations. In responding to the motion, de-
fendants made no reference to any statute of limitations
as an affirmative defense to plaintiff's claims. Instead,

defendants merely stipulated with regard to plaintiff's claims and the entry of a subsequent order of judgment against them.

Subsequently, at the hearing to determine what, if any, penalties the trial court should assess against defendants as a result of their admitted liability, defendants continued to remain silent about a statute of limitations defense. Defendants also made no mention of a statute of limitations defense when they filed a motion to stay the penalty payment date or when they sought immediate appellate review of the order assessing the penalty and denying the stay of payment of the penalty. Instead, defendants waited to assert their statute of limitations defense until plaintiff moved for additional penalties at a subsequent hearing. Thus, under *Palenkas*, by failing to raise a statute of limitations defense in response to plaintiff's motion for summary disposition and at the first hearing regarding penalties, defendants waived the defense. Clearly, the purpose of plaintiff's suit was to obtain penalties for defendants' violations, and defendants' stipulation with regard to liability was merely a threshold requirement to averring such penalties.

Defendants contend that it would have been inappropriate to assert a statute of limitations defense at any earlier proceeding because the trial court had only imposed penalties for defendants' failure to timely submit required reports during a period within the applicable period of limitations. Instead, defendants argue that they raised the statute of limitations defense in response to plaintiff's motion for additional penalties because the amount of the penalties was subject to the defense as a result of the timing of the violations to which they corresponded. We disagree.

Defendants cite *Horvath v Delida*, 213 Mich App 620; 540 NW2d 760 (1995), for the proposition that their own continuing wrongs prevent plaintiff from asserting that defendants waived the statute of limitations defense by not raising it at the hearing on plaintiff's motion for summary disposition. In *Horvath*, this Court explained that, in certain cases, the doctrine of continuing wrongs recognizes that "[w]here a defendant's wrongful acts are of a continuing nature, the period of limitation will not run until the wrong is abated; therefore, a separate cause of action can accrue each day that the defendant's tortious conduct continues." *Id.* at 626. Defendants rely on the proposition that "[w]here the continuing-wrongful-acts doctrine applies, the damages recoverable are limited to those occurring within the applicable limitation period and, where appropriate, after the filing of the complaint." *Id.* at 627. Defendants' reliance on the doctrine of continuing wrongs, however, is misplaced because this doctrine has thus far been given only limited application. *Blazer Foods, Inc v Restaurant Properties, Inc*, 259 Mich App 241, 247; 673 NW2d 805 (2003) (noting that the doctrine only applies in the limited cases of trespass, nuisance, and civil rights violations).[3]

Finally, defendants assert that the two-year limitations period set forth in MCL 600.5809(2) of the Revised Judicature Act for actions "for the recovery of a penalty or forfeiture based on a penal statute" is applicable to plaintiff's original action for the imposition of civil penalties under part 213 of the NREPA. In contrast,

---

[3] We note that in *Garg v Macomb Co Community Mental Health Services*, 472 Mich 263, 284-285; 696 NW2d 646 (2005), amended 473 Mich 1205 (2005), our Supreme Court rejected application of the doctrine of continuing wrongs to claims filed under the Civil Rights Act, MCL 37.2101 *et seq.*, and the Persons With Disabilities Civil Rights Act, MCL 37.1101 *et seq.*

plaintiff contends that the general, six-year limitations period under MCL 600.5813 applies. However, because defendants waived their statute of limitations defense, we need not determine which limitations period applies to the imposition of penalties under the NREPA.

### IV. CONCLUSION

In sum, the trial court had the authority to impose the penalties sought by plaintiff under MCL 324.21323(1). Further, because they failed to timely assert it, defendants waived their statute of limitations defense. We affirm.