## STATE OF MICHIGAN
## COURT OF APPEALS

CITY OF RIVER ROUGE and COUNTY OF WAYNE,

        Plaintiffs-Appellants,

v

EES COKE BATTERY COMPANY, L.L.C., EES COKE BATTERY, L.L.C., DTE ENERGY COMPANY, and DTE ENERGY SERVICES, d/b/a DTEES and DTE, L.L.C.,

        Defendants-Appellees.

UNPUBLISHED
December 9, 2014

No. 314789
Wayne Circuit Court
LC No. 12-003703-AA

EES COKE BATTERY, L.L.C.,

        Appellant,

v

CITY OF RIVER ROUGE,

        Appellee.

No. 315621
Wayne Circuit Court
LC No. 12-003353-AA

EES COKE BATTERY, L.L.C.,

        Appellant,

v

CITY OF RIVER ROUGE,

        Appellee.

No. 315632
Wayne Circuit Court
LC No. 12-003354-AA

EES COKE BATTERY, L.L.C.,

        Appellant,

v                                                          No. 315633
                                                           Wayne Circuit Court
CITY OF RIVER ROUGE,                                       LC No. 12-003356-AA

     Appellee.

---

DETROIT EDISON COMPANY,

     Appellant,

v                                                          No. 315634
                                                           Wayne Circuit Court
CITY OF RIVER ROUGE,                                       LC No. 12-003359-AA

     Appellee.

---

DETROIT EDISON COMPANY,

     Appellant,

v                                                          No. 315635
                                                           Wayne Circuit Court
CITY OF RIVER ROUGE,                                       LC No. 12-003360-AA

     Appellee.

---

CITY OF RIVER ROUGE and COUNTY OF
WAYNE,

     Plaintiffs-Appellees,

v                                                          No. 315638
                                                           Wayne Circuit Court
EES COKE BATTERY COMPANY, L.L.C., EES                      LC No. 12-003703-AA
COKE BATTERY, L.L.C., DTE ENERGY
COMPANY, and DTE ENERGY SERVICES,
d/b/a DTEES and DTE, L.L.C.,

     Defendants-Appellants.

---

Before: CAVANAGH, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

-2-

PER CURIAM.

These consolidated appeals involve whether 15 amended tax exemption certificates issued by the State Tax Commission (STC) under part 59[1] of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq.*, for air pollution control facilities owned by defendant EES Coke Battery Company, L.L.C. (EES Coke), should be revoked because of fraud or misrepresentation, and whether the STC followed proper procedures before issuing five other new or amended exemption certifications for air or water pollution control facilities under parts 37[2] and 59 of the NREPA.

The city of River Rouge challenged the STC's decision to issue the five new or amended tax exemption certificates in an appeal filed in the Wayne Circuit Court. In Docket Nos. 314621, 315632, and 315633, EES Coke Battery, L.L.C., appeals by leave granted the circuit court's March 20, 2013, amended order directing the Department of Environmental Quality (DEQ) to review three exemption certificates issued by the STC to EES Coke and inform the STC whether it approves the applications for the tax exemptions. In Docket Nos. 314634 and 315635, Detroit Edison Company (Detroit Edison) appeals by leave granted the same order, which also directed the DEQ to similarly review two other tax exemption certificates issued by the STC to Detroit Edison. We affirm the circuit court's decision requiring the DEQ to conduct a review, but modify the court's order to limit the scope of the review and to require that the STC reconsider its decision after receiving the DEQ's findings.

The city of River Rouge and Wayne County appealed the STC's decision denying their petition to revoke the 15 amended tax exemption certificates involving air pollution control facilities to the Wayne Circuit Court. In Docket No. 314789, Wayne County and the city of River Rouge jointly appeal by leave granted the circuit court's order of January 25, 2013, which requires the STC to reconsider its decision not to revoke those tax exemption certificates based on fraud after it receives the DEQ's report regarding its review of the certificates. In Docket No. 315638, defendants appeal by leave granted the same January 25, 2013, order. We vacate the circuit court's remand order and reinstate the STC's decision.

## I. STANDARD OF REVIEW

We review de novo issues of constitutional law and statutory construction. *Ross v Blue Care Network of Mich*, 480 Mich 153, 164; 747 NW2d 828 (2008); *Oshtemo Twp v Kalamazoo Co Rd Comm*, 302 Mich App 574, 583; 841 NWW2d 135 (2013).

The scope of our review of an administrative agency's decision depends on whether a hearing was required. When reviewing an agency decision for which a hearing is not required, judicial review is limited to determining whether the decision was authorized by law. Const

---

[1] MCL 324.5901 *et seq.*

[2] MCL 324.3701 *et seq.*

1963; art 6, § 28. Neither the circuit court nor this Court may review the evidentiary support for the administrative agency's decision. *CVS Caremark v State Tax Comm*, 306 Mich App 58, 61; ___ NW2d ___ (2014). An agency's action "[is] not authorized by law if it violate[s] a statute or constitution, exceed[s] the agency's statutory authority or jurisdiction, materially prejudice[s] a party as a result of unlawful procedures, or [i]s arbitrary and capricious." *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 87-88; 832 NW2d 288 (2013). If an agency's governing statute requires a hearing, judicial review includes whether the agency's decision was supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *Northwestern Nat'l Cas Co v Comm'r of Ins*, 231 Mich App 483, 488; 586 NW2d 563 (1998). The required hearing contemplates that there will be an opportunity to present evidence and argument before an administrative tribunal. *CVS Caremark*, 306 Mich App at 61.

Because the matters before us involve the issuance or revocation of air or water pollution control tax exemption certificates by the STC, an administrative agency, it is also necessary to consider the Administrative Procedures Act (APA), MCL 24.201 to MCL 24.328.[3] See MCL 324.3707 and MCL 324.5907. These APA provisions set forth specific procedures for a "contested case," that is, " 'a proceeding . . . in which a determination of the legal rights, duties, or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing.' " *In re Parole of Elias*, 294 Mich App 507, 537 n 24; 811 NW2d 541 (2011), quoting MCL 24.203(3). Only in a "contested case" does a court decide if an agency's decision was supported by competent, material, and substantial evidence on the whole record. *Id.*; see also MCL 24.306(1)(d).

This Court reviews the circuit court's decision regarding an appeal from an administrative agency to determine if the circuit court applied correct legal principles and "whether it misapprehended or misapplied the substantial evidence test to the agency's findings." *Polania v State Employees' Retirement Sys*, 299 Mich App 322, 328; 830 NW2d 773 (2013); see also *Boyd v Civil Serv Comm*, 220 Mich App 226, 234; 559 NW2d 342 (1996). But this Court will not overturn a circuit court's order if any error by the circuit court was harmless. *Natural Resources Defense Council*, 300 Mich App at 89.

## II. DOCKET NOS. 315621 AND 315632 THROUGH 315635

In the five consolidated appeals involving the circuit court's March 20, 2013, amended order requiring the DEQ to review five tax exemption certificates issued or amended by the STC, appellants EES Coke Battery, L.L.C., and Detroit Edison argue that the circuit court erred by ruling that it was necessary to remand for review by the DEQ. They contend that the DEQ's review was not required pursuant to a memorandum of understanding entered into on September

---

[3] MCL 209.105 provides that "[a]ll orders, certificates and subpoenas made or issued by the state tax commission shall be signed by the chairman, and the seal of the commission shall be affixed thereto." The STC chairman signed the tax exemption certificates at issue in these consolidated appeals.

12, 2011, by the DEQ, the Department of Treasury, and the STC pursuant to Article VII, Part 2, § 311 of an appropriations bill enacted as 2011 PA 63. We disagree.

"The primary goal of statutory interpretation is to give effect to the Legislative intent, focusing first on the statute's plain language." *Klooster v City of Charlevoix*, 488 Mich 289, 295; 795 NW2d 578 (2011). "Individual words and phrases, while important, should be read in the context of the entire legislative scheme." *Johnson v Recca*, 492 Mich 169, 201; 821 NW2d 520 (2012). Statutory language is ambiguous if it irreconcilably conflicts with another provision or is equally susceptible to more than one meaning. *One's Travel Ltd v Dep't of Treasury*, 288 Mich App 48, 54-55; 791 NW2d 521 (2010). If there is no ambiguity, the statutory language is applied as written. *Id.* at 54.

Parts 37 and 59 of the NREPA establish procedures for the STC to issue tax exemption certificates for water and air pollution control facilities. Although the "facilit[ies]" entitled to the exemption under Parts 37 and 59 differ,[4] both parts require that the STC "seek approval of the department"[5] before issuing a certificate. MCL 324.3702(2); MCL 324.5902. Further, both parts require that the "department" made specific findings regarding a facility. With respect to water pollution control facilities, MCL 324.3703 provides:

> If the department finds that the facility is designed and operated primarily for the control, capture, and removal of industrial waste from the water, and is suitable, reasonably adequate, and meets the intent and purposes of part 31, the department shall notify the state tax commission, which shall issue a certificate. The effective date of the certificate is the date on which the certificate is issued.

Similarly, with respect to air pollution control facilities, MCL 324.5903 provides:

---

[4] MCL 324.3701, which applies to water pollution control facilities, defines a "facility" as "any disposal system, including disposal wells, or any treatment works, appliance, equipment, machinery, or installation constructed, used, or placed in operation primarily for the purpose of reducing, controlling, or eliminating water pollution caused by industrial waste." MCL 324.5901, which applies to air pollution control facilities, defines "facility," in part, as "machinery, equipment, structures, or any part or accessories of machinery, equipment, or structures, installed or acquired for the primary purpose of controlling or disposing of air pollution that if released would render the air harmful or inimical to the public health or to property within this state."

[5] "Department" is defined in MCL 324.301 of the NREPA as the "the director of the department of natural resources or his or her designee to whom the director delegates a power or duty by written instrument." Effective October 1, 1995, the environmental functions of the Department of Natural Resources were transferred to the DEQ pursuant to an executive reorganization order. MCL 324.99903; *Attorney General ex rel Dep't of Environmental Quality v Bulk Petroleum Corp,* 276 Mich App 654, 656 n 1; 741 NW2d 857 (2007).

If the department finds that the facility is designed and operated primarily for the control, capture, and removal of pollutants from the air, and is suitable, reasonably adequate, and meets the intent and purposes of part 55 and rules promulgated under that part, the department shall notify the state tax commission, which shall issue a certificate. The effective date of the certificate is the date on which the certificate is issued.

These provisions require a determination by the DEQ that a particular facility satisfies statutory requirements for the issuance of a certificate. See *DaimlerChrysler Corp v State Tax Comm*, 482 Mich 220, 226-227, 266; 753 NW2d 605 (2008). In the five consolidated appeals before us, there was no review undertaken by the DEQ before the STC issued new or amended tax exemption certificates on December 20, 2011. Indeed, the STC record underlying Detroit Edison's application to amend one certificate to add modifications for a dust control system and its application to obtain a new certificate for the reinstallation of certain equipment at the base of a chimney indicate that the DEQ refused to review the applications in July 2011, pursuant to letters indicating that it had informed the STC that it was "terminating the Memorandum of Understanding between the two departments on February 12, 2010," and that it had lost general fund support for the program.

We agree with the circuit court that the appropriations bill enacted by way of 2011 PA 63 before the five amended certificates were issued did not alter the DEQ's statutory obligation to review applications for tax exemption certificates. Article VII, Part 1, § 101 of 2011 PA 63 appropriated certain funds to the DEQ for the fiscal year ending September 30, 2012, subject to specified conditions. Part 2, § 311, contained the following condition for the remediation division of the DEQ:

The department shall enter into a memorandum of understanding with the department of treasury to develop a process for the review and approval of tax exemption certificates in accordance with the list of commonly approved air pollution control equipment adopted by the state tax commission on August 16, 2010 and the list of commonly approved water pollution equipment adopted by the state tax commission on August 16, 2010.

This provision demonstrates that the Legislature was aware that the STC had adopted a list of commonly approved air and water pollution control equipment on August 16, 2010. But it is also presumed that the Legislature was aware of the statutory requirements in the NREPA when it enacted 2011 PA 63. *People v Ramsdell*, 230 Mich App 386, 393; 585 NW2d 1 (1998).

We note that the Legislature has demonstrated an ability to include "memorandum of understanding" requirements in a statute when it intends for state departments to work together to carry out their responsibilities. See MCL 286.474(23) and MCL 324.8710(10). An agency may also have implied powers that are necessary to the exercise of its express statutory powers. *Herrick Dist Library v Library of Mich*, 293 Mich App 571, 574, 583; 810 NW2d 110 (2011); see also *Ranke v Corp & Securities Comm*, 317 Mich 304, 309; 26 NW2d 898 (1947).

While the matter before us involves a "memorandum of understanding" set forth in a condition of an appropriations bill, such a memorandum arguably could have been entered into

by the STC and the DEQ, even without the "memorandum of understanding" provision in the bill, to allow those agencies to carry out their respective duties under the NREPA in an efficient manner. But see *Workers Compensation Director v MacDonald's Industrial Products, Inc (On Reconsideration)*, 305 Mich App 460, 470-474; 853 NW2d 467 (2014) (holding that the STC has no implied powers to retroactively revoke exemption certificates for the industrial facilities tax). Regardless, considered in the context of the entire legislative scheme, the condition in the appropriations bill, while perhaps facilitating a more efficient review, does not alter the DEQ's statutory duty to review applications on a case-by-case basis.[6]

Nonetheless, this does not end our inquiry because the memorandum of understanding entered into by the DEQ, the Department of Treasury, and the STC itself establishes what the DEQ agreed to do with respect to applications for tax exemption certifications. An administrative agency may not change the laws enacted by the Legislature. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 98; 754 NW2d 259 (2008). We disagree with the circuit court's decision to the extent that it determined that the memorandum of understanding did not alter the DEQ's role and responsibilities under the NREPA. The DEQ only agreed to annually review and approve a list of commonly approved equipment and, "[w]hen requested by the STC, assist in the review of a limited number of applications where the equipment is not identified on the annual pollution control equipment list approved by the MDEQ."

Because MCL 324.3702(2) and MCL 324.5902(2) require the STC to seek approval from the DEQ for a particular application, and MCL 324.3703 and MCL 324.5903 require that the DEQ report its findings to the STC, the memorandum of understanding is partially invalid. While the DEQ might find it efficient to consult a list of commonly approved equipment when reviewing a particular application, it is still required as a matter of law to make findings with respect to the application and report its findings to the STC.

Therefore, even assuming for purposes of our review that all five of the tax exemption certificates underlying this appeal were based on equipment included on the list of commonly approved pollution control equipment, the circuit court reached the right result in remanding the matter for the DEQ to conduct its review.[7]

We conclude, however, that the circuit court's remand order is too broad because it requires the DEQ to determine what amount, if any, of the tax exemption granted should be reduced for the commercial or productive value derived from materials captured or recovered by any pollution control facility. Both part 37 and part 59 of the NREPA contain a provision for reducing the tax exemption granted "to the extent of any commercial or productive value derived

---

[6] Because we conclude that the condition does not alter or effectively amend the NREPA, it is unnecessary to address the city of River Rouge's argument that any such alteration or amendment would be unconstitutional.

[7] Although EES Coke Battery, L.L.C., and Detroit Edison argue that this reflects "bad public policy," the redress for bad public policy is properly sought in the Legislature. *Complete Auto & Truck Parts, Inc v Secretary of State*, 264 Mich App 655, 661; 692 NW2d 847 (2004).

from materials captured or recovered" by the pollution control facility. MCL 324.3702(2); MCL 324.5902(2). But tax exemption certificates are only required to state "the total acquisition cost of the facility entitled to the exemption." MCL 324.3704(3); MCL 324.5904(3). Further, the DEQ is only responsible for making the findings required by MCL 324.3703 for water pollution control facilities and by MCL 324.5903 for air pollution control facilities. Therefore, we modify the circuit court's remand order to limit the scope of the DEQ's responsibility on remand to the findings required by MCL 324.3703 for the water pollution control tax exemption certificates and MCL 324.5903 for the air pollution control tax exemption certificates. Because the STC is ultimately responsible for issuing the tax exemption orders, we also modify the circuit court's order to require that the STC reconsider its decision to issue the tax exemption certificates after it receives the DEQ's findings.

### III. DOCKET NOS. 314789 AND 315638

These two consolidated appeals involve a petition filed by the city of River Rouge and Wayne County in the STC to have five tax exemption certificates issued on September 16, 2008, and another 10 amended tax exemption certificates issued on April 21, 2011, for the purpose of changing the name of the owner of the air pollution control facilities to defendant EES Coke, revoked because of fraud and misrepresentation. Both plaintiffs and the various named defendants challenge the circuit court's order of January 25, 2013, remanding this matter to the STC to reconsider its decision regarding the certificates after it receives a report from the DEQ. The city of River Rouge argues that the certificates should have been revoked because of fraud or misrepresentation or, alternatively, that the matter should be remanded for the STC to make findings fact and conclusions of law regarding this issue. Defendants argue that the STC's decision not to revoke the certificates should be reinstated, without the necessity of a remand.[8] We conclude that the STC's decision should be reinstated.

Part 59 of the NREPA provides, in pertinent part:

> (1) The state tax commission, on notice by certified mail to the applicant and *opportunity for a hearing*, shall, on its own initiative or on complaint of the department, the department of treasury, or the assessor of the taxing unit in which any property to which the certificate relates is located, modify or revoke the certificate if any of the following appear:
>
> (a) *The certificate was obtained by fraud or misrepresentation*. [MCL 324.5906 (emphasis added).]

The circuit court's decision, including its additional explanation when denying defendants' motion for reconsideration, indicates that it was applying MCL 324.5902 and MCL 324.5903 when ordering the remand. We agree with plaintiffs that the circuit court did not address their challenge to the STC's denial of the petition to revoke the certificates under MCL 324.5906(1)(a).

---

[8] The STC has also filed an amicus brief, seeking to have its decision affirmed.

To properly preserve an issue for appeal, it should be presented to and decided by the lower court. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). Nonetheless, this Court may overlook preservation requirements to consider an issue of law for which the necessary facts have been presented, to consider an issue that is necessary to a proper disposition of the case, or where the failure to consider the issue would result in manifest injustice. *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002). Considering that all parties have raised challenges to the circuit court's decision in these consolidated appeals and that the necessary facts have been presented, appellate consideration is appropriate.

Preliminarily, we disagree with defendants and the STC that a petition under MCL 324.5906 is not subject to the provisions for contested hearings in the APA. The STC's reliance on MCL 324.5907 is misplaced because that statute expressly recognizes that the APA applies to both the issuance of a tax exemption certificate and a finding and order of the STC to revoke it. Regardless, judicial review under Const 1963, art 6, § 28, would include whether the STC's decision was supported by competent, material, and substantial evidence on the whole record because MCL 324.5906 plainly contemplates that there will be an opportunity to present evidence and argument to the STC.

The STC record does not establish that the STC conducted an evidentiary hearing. Although plaintiffs submitted several documents with their petition, the STC heard only the parties' oral arguments at the hearing on December 6, 2011. Counsel's arguments do not constitute evidence. Mich Admin Code, R 209.67(2). Further, we find no support for plaintiffs' suggestion that defendants were given an opportunity to file a written response to their petition. Mich Admin Code, R 209.19, provides that "[a]t the request of the commission, parties may file briefs and reply briefs before a meeting within a time frame designated by the commission." There is no indication in the record that such a request was made in this case. The record indicates only that EES Coke Battery, L.L.C., was given notice in letters dated November 15, 2011, that the STC had received a request to revoke exemption "applications," that a hearing would take place on December 6, 2011, and that the STC had requested a company representative to provide "testimony regarding the project."

Nonetheless, we conclude that the STC's failure to conduct an evidentiary hearing does not require a remand to the STC. We agree with plaintiffs that the two STC members who considered the petition at the hearing of December 6, 2011, and on December 20, 2011, did not make any findings of fact. But it is apparent from the record that they reviewed the petition and properly determined that plaintiffs had not established a prima facie case for revoking the tax exemption certificates based on fraud.[9]

"Generally, in contested cases under the APA, the proponent of an order or petition has the burden of proof and the burden of going forward." *Bunce v Secretary of State*, 239 Mich

---

[9] Pursuant to the executive reorganization order in MCL 209.131, effective December 28, 2009, the State Tax Commission was created within the Department of Treasury, and consists of three members. A majority of the members constitutes a quorum for purposes of transacting the commission's business.

App 204, 216; 607 NW2d 372 (1999). But a reviewing court may set aside an STC decision under MCL 24.306 on either a factual or legal basis. *DaimlerChrysler Corp*, 482 Mich 220, 248 n 10 (opinion of WEAVER, J.). A claim is legally insufficient if no factual development could justify the claim for relief.

Because the STC did not conduct an evidentiary hearing and made no factual findings regarding any disputed facts, we do not address plaintiffs' claim that the circuit court should have found that the STC's denial of the petition was not supported by competent, material, and substantial evidence. Rather, we limit our review to the legal sufficiency of the claim.

In this regard, plaintiffs' claim of fraud or misrepresentation is legally flawed because MCL 324.5906(1)(a) requires a showing that "[t]he *certificate was obtained* by fraud or misrepresentation" (emphasis added). In addition, the Legislature is presumed to know the primary, ordinary, and generally understood meaning of words used in a statute, unless a contrary intent is manifest. *Gen Electric Credit Corp v Wolverine Ins Co*, 420 Mich 176, 189; 362 NW2d 595 (1984). "Fraud" is defined as " '[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment.' " *People v Dewald*, 267 Mich App 365, 383; 705 NW2d 167 (2005), quoting *Black's Law Dictionary* (7th ed). In order for the suppression of information to constitute silent fraud, there must be a legal or equitable duty of disclosure. *United States Fidelity & Guaranty Co v Black*, 412 Mich 99, 125; 313 NW2d 77 (1981). And while actual fraud requires an intent to deceive, constructive fraud "only requires a misrepresentation which need not amount to a purposeful design to defraud." *Gen Electric Credit Corp*, 420 Mich at 188.

In this case, the only certificates that were obtained were amended certificates containing updated information regarding the owner of the equipment. Five amended certificates were issued on September 16, 2008. Amended certificate no. 1-1929 was originally issued in 1990. The Department of Natural Resources (DNR) approved the coke oven monitoring system underlying the original certificate. Amended certificate nos. 1-2001, 1-2002, 1-2003, and 1-2013 were originally issued on December 30, 1991. The DNR approved the components for benzene emission controls underlying the applications for certificate nos. 1-2001 and 1-2003, and for coke handling and coke screening systems underlying certificate no. 1-2002. The DNR approved the rebuilding of a coke battery underlying certificate no. 1-2013, except for certain costs associated with the coke oven doors. Additional equipment was allocated to certificate nos. 1-2001 and 1-2013 in 1995, which was also approved by the DNR.

While the equipment underlying the amended certificates was originally owned by National Steel Corporation, plaintiffs do not claim that respondent EES Coke could not claim the benefits of the tax exemption certificate, as a subsequent owner under the terms of a 1997 asset purchase agreement, without acquiring amended certificates naming it as the owner. Considering the petition and the supporting documents that formed the basis of plaintiffs' claim under MCL 324.5906(1)(a), arising from the issuance of the amended certificates, we conclude that it was legally insufficient to establish a basis for revocation.

Plaintiffs offered no evidence of any misrepresented fact in support of their petition to revoke the amended certificates that were issued on September 16, 2008. Rather, plaintiffs' evidence indicates that a manager at DTE Energy Company made a letter request to the STC in

May 2008 for the certificates to be reissued to name EES Coke as the owner of the equipment, and that someone took forms then being used by the STC for new, amended, and transfer certificates, which identified either United States Steel Corporation or National Steel Corporation as the "applicant" in the TE-SOURCE portion of the form, and then handwrote information consistent with the changes sought in the letter. None of the forms was signed. Further, neither the TE-EQUIPMENT portions nor the TE-PROCESS portions were completed.

Because plaintiffs failed to establish any basis for finding a duty owed by an owner of tax exempt equipment to provide a primary standard industrial classification (SIC) code or to report whether there was any commercial or productive value in order to request a mere change in the name of the owner on the certificate in 2008, we reject plaintiffs' claim that the incompleteness of the form and, in particular, the omission of information regarding the primary SIC code in the TE-SOURCE portion of the form and the omission of any information regarding the value of recovered product in the TE-EQUIPMENT portion of the form, was sufficient to establish fraud under MCL 324.5906(1)(a). Even if this information was required and plaintiffs could establish that materials were captured or recovered from the pollution control facilities underlying each of the five certificates, plaintiffs did not establish that the omitted information was material to the issuance of the amended certificates. As indicated earlier, MCL 324.5904(3) only requires that the certificate "state the total acquisition cost of the facility entitled to the exemption."

To the extent that plaintiffs alleged that they relied on the omitted information and sought to revoke the amended certificates, effective December 31, 1997, plaintiffs' claim is not actionable because MCL 324.5906(1)(a) only permits revocation if the "certificate was obtained by fraud or misrepresentation" and MCL 324.5906(2) only provides for repayment when a certificate is revoked in the amount of "all taxes that would have been payable if a certificate had not been issued." EES Coke did not obtain any certificate from plaintiffs. We therefore conclude that the petition and supporting documents were legally insufficient to set forth a claim for revocation under MCL 324.5906(1)(a).

With respect to the 10 amended certificates issued on April 21, 2011, the record indicates that the basis of plaintiffs' claim was the same as the amended certificates issued on September 16, 2008, except that the evidence indicated that the Department of Treasury, by letter, requested that the manager of DTE Energy Company fully complete the TE-SOURCE portion of the application form then being used for new, amended, and transfer certificates, and that this portion was completed. Even assuming that plaintiffs could establish that the primary SIC code listed on this form constituted a misrepresentation, plaintiffs did not offer any basis for finding that the code was material to whether EES Coke could obtain the amended certificate. Accordingly, and considering that plaintiffs did not establish any duty owed by an owner of tax exempt equipment to report whether there was any commercial or productive value in order to request a mere change in the name of the owner on the certificate in 2011, or that this information was material to the issuance of the amended certificates, we conclude that plaintiffs' fraud or misrepresentation claim with respect to the 10 amended certificates was legally insufficient. No factual development could justify the revocation of the certificates.

We reject plaintiffs' additional claim that the circuit court erred by failing to find that the STC's denial of their petition to revoke the amended certificates was arbitrary, capricious, and an abuse of discretion. Plaintiffs' claim is inconsistent with their meritorious argument on appeal

-11-

that revocation is mandatory, and not discretionary, when fraud or misrepresentation has been established because MCL 324.5906(1) uses the word "shall." We also hold that plaintiffs have failed to establish any basis for relief based on MCL 24.285. A remand to the STC for further explanation of its decision is not necessary to facilitate our review. See *Blom v Thermotron Corp*, 139 Mich App 50, 55; 360 NW2d 172 (1984).

In sum, we conclude that the circuit court's failure to expressly rule on plaintiffs' specific challenges to the STC's decision denying their petition to revoke the 15 amended certificates was harmless. We deny plaintiffs' request for an order revoking the 15 amended certificates because plaintiffs failed to establish a legally sufficient basis for revocation under MCL 324.5906(1)(a). Rather, because the petition was legally insufficient to establish a basis for revoking the 15 amended certificates based on fraud or misrepresentation, we vacate the circuit court's remand order and reinstate the STC's decision denying the petition for revocation.

We affirm the circuit court's remand order as modified by this opinion in Docket Nos. 315621 and 315632 through 315635. We vacate the circuit court's remand order and reinstate the STC's decision in Docket Nos. 314789 and 315638.

Affirmed but modified in part; vacated in part. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219.

/s/ Mark J. Cavanagh
/s/ Kathleen Jansen
/s/ Amy Ronayne Krause

-12-