# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* BEVERLY J. LAFOREST LIVING TRUST
& BEVERLY J. LAFOREST FAMILY TRUST.

---

JOSEPH LAFOREST and MARK LAFOREST,
Co-Trustees for the BEVERLY J. LAFOREST
LIVING TRUST and the BEVERLY J.
LAFOREST FAMILY TRUST, and MICHAEL
LAFOREST, ANDREW LAFOREST, and JAMES
LAFOREST,

          Petitioners-Appellees,

v

PATRICIA ANN SWISS,

          Respondent-Appellant.

UNPUBLISHED
January 5, 2016

No. 323296
Emmet Probate Court
LC No. 13-012905-TV

---

Before: Saad, P.J., and Stephens and O'Brien, JJ.

Per Curiam.

The probate court entered a judgment that removed appellant as trustee for the Beverly J. La Forest Living Trust (the Living Trust) and the Beverly J. La Forest Family Trust (the Family Trust). It also awarded appellees $134,152 after determining that appellant engaged in self-dealing and breached her fiduciary duties. Appellant appeals as of right this final order, see MCR 5.801(B)(2)(a). We affirm.

Appellant first argues that the trial court erred in refusing to dismiss the petition against her based on a statute of limitations defense. We disagree.

We review whether an action is barred by an applicable statute of limitations de novo. *Terlecki v Stewart*, 278 Mich App 644, 649; 754 NW2d 899 (2008). Our review of the probate court "on a written transcript of the record made in the probate court" however, is not de novo. MCL 600.866(1). "The trial court's factual findings are reviewed for clear error, while the court's dispositional rulings are reviewed for an abuse of discretion." *In re Estate of Temple*, 278 Mich App 122, 128; 748 NW2d 265 (2008). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if

-1-

there is evidence to support the finding." *In re Estate of Bennett*, 255 Mich App 545, 549; 662 NW2d 772 (2003).

The trial court concluded that appellant's failure to raise the five-year statute of limitations in her initial responsive pleading resulted in that affirmative defense being waived. We agree.

The statute of limitations is an affirmative defense that must be affirmatively pleaded or it is waived. *Attorney General v Bulk Petroleum Corp*, 276 Mich App 654, 665; 741 NW2d 857 (2007). A party must state the affirmative defense "under a separate heading and must include the facts constituting such a defense." *Id.* Appellant argues that general citations to MCL 700.7905 were sufficient to put appellees on notice. However, this contention is without merit since both the answer and motion to dismiss explicitly refer to the one-year statute of limitations in MCL 700.7905(1)(a), giving the impression that the general references to MCL 700.7905 also refer to the one-year statute of limitations and not to the five-year limitations period that was never mentioned. The probate court did not abuse its discretion in denying appellant the affirmative defense.

Appellant next argues that the trial court erred in concluding that the assets she transferred to herself were not gifts from Beverly. Again, we disagree. The trial court did not clearly err in its factual determinations that Beverly did not make any outright gift to appellant and that therefore, when appellant transferred assets to herself for her sole benefit she engaged in self-dealing contrary to the wishes of Beverly and violated her fiduciary duties both as trustee and pursuant to the power of attorney. In finding that this conclusion was not clearly erroneous, we acknowledge that certain evidence in the record does support appellant's contentions that such transfers were intended as outright gifts. Appellant, her ex-husband, and, most credibly, attorney Ternes all testified that Beverly intended for appellant to have all of her possessions as part of the Medicaid planning. Letters also revealed that appellees were told about the transfers to appellant, but did not object until after their mother's death. It was also true that of all the siblings appellant was the only one who frequently visited with and cared for their mother. The record shows that many of the appellees did not visit their mother more than once or twice in the eleven years she was at the nursing home, while appellant visited her almost daily. However, we must give regard "to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). With this in mind, we cannot conclude that the probate court's factual findings were clearly erroneous. Appellees testified that, despite several transfers being labeled in letters as "gifts" "rent" or "quit-claimed", the transfers to appellant were merely to protect their mother's assets and qualify her for Medicaid, and were not represented as outright gifts to appellant. The probate court found their testimony credible and we defer to the probate court because it was in the position to see and hear the witnesses and to judge their credibility.

We must now examine three individual transfers: the condominium, an annuity, and cash. We begin with the condominium which was the only transfer made from the Living Trust. Beverly initially placed this asset in the Living Trust and then it was transferred out of the Living Trust by appellant to herself and Beverly jointly. On June 4, 2003, appellant, using her power of attorney, executed a quit-claim deed transferring the condominium from herself and Beverly as joint tenants to herself solely. Appellant then sold the condominium for $83,500, receiving

$73,000 after taxes and real estate fees. Appellant used $53,000 to make a down payment on a home for herself and placed the remaining amount in the Family Trust. As a co-trustee, appellant owed the beneficiaries, appellees, a duty of loyalty provided for in MCL 700.7802(1) and (2), which state:

> (1) A trustee shall administer the trust solely in the interests of the trust beneficiaries.

> (2) Subject to the rights of a person dealing with or assisting the trustee as provided in section 7912, a sale, encumbrance, or other transaction involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or which is otherwise affected by a substantial conflict between the trustee's fiduciary and personal interests is voidable by a trust beneficiary affected by the transaction unless 1 or more of the following apply:

> (a) The transaction was authorized by the terms of the trust.

> (b) The transaction was approved by the court after notice to the interested persons.

> (c) The trust beneficiary did not commence a judicial proceeding within the time allowed by section 7905.

> (d) The trust beneficiary consented to the trustee's conduct, ratified the transaction, or released the trustee in compliance with section 7909.

> (e) The transaction involves a contract entered into or claim acquired by the trustee before the person became or contemplated becoming trustee.

> (f) The transaction is otherwise permitted by statute.

By using her powers as co-trustee to transfer the condominium out of the trust and to herself and Beverly as joint tenants with rights of survivorship, appellant engaged in a sale of trust property in which she had a personal interest as a recipient. Therefore, the transaction is voidable by the trustees unless one of the enumerated sub-sections applies. While the trust granted appellant the power as trustee to make transfers of trust property, it did not grant her the right to engage in self-dealing. The transaction was not approved by the court. There is no evidence that any of the beneficiaries consented to a transaction that was an outright gift of the condominium and not merely a means to make Beverly eligible for Medicaid. Finally, the transaction was not entered into before appellant became trustee, and it is not otherwise permitted by statute.

The other transfers were done not as trustee but under the power of attorney. The five-year annuity was purchased by appellant, pursuant to the power of attorney. It was purchased to pay Beverly small monthly benefits and then make a large balloon payment at the end of the five years. In the event Beverly died before the balloon payment was made, it was to go to the Family Trust. In 2007, the annuity's balloon payment came due. Appellant purchased a funeral

contract and bought a car jointly with Beverly, a GMC Acadia for $37,152.40. Appellant contributed to the purchase price by trading in her old car, and used the new vehicle to drive her mother to appointments and social events. The vehicle was initially titled in both names, but appellant removed Beverly's name from the title about a year later. The third transfers took place collectively in June and July of 2002 when appellant had two checks written to herself from Beverly's credit union account totaling $13,500; she testified that Beverly gave her this money to enable her to pay rent and maintenance on the condominium.

Since the funds appellant used to purchase the vehicle and the $13,500 in checks that she had written to herself were assets that were never placed into the Living Trust, MCL 700.7802 has no applicability. Appellant transferred the assets to herself by using the power of attorney. Powers of attorney are subject to the laws of agency, including the principle that "a person who undertakes to act as agent for another may not pervert his powers to his own personal ends and purposes without the consent of the principal after a full disclosure of the details of the transaction." *Vander Wall v Midkiff*, 166 Mich App 668, 677-678; 421 NW2d 263 (1988). In *Saari v Susser*, this Court affirmed *Vander Wall*, and went on to state that an agent is to act only for the principal's benefit and has a duty "not to compete with the principal on his own account." 254 Mich App 232, 235; 657 NW2d 147 (2002) quoting Restatement, 2d, § 13, comment a, p. 58. When an attorney-in-fact acts in his or her own interest and not under the direction of the principal, he or she may be liable to the principal's estate for the amounts obtained wrongfully. *Id.* at 234-235.

The dispositive question becomes whether Beverly authorized appellant to make these transfers or whether appellant made them for her own personal benefit without the consent of her mother. We conclude the latter. When appellant removed Beverly's name from the title, she deprived her mother of an asset while increasing her own personal interest in that asset. Absent her mother's consent, which the probate court found did not exist, such a transfer was a violation of appellant's fiduciary duty. Moreover, the $13,500 in checks clearly harmed Beverly's account and benefitted appellant's personal account. Again, the factual findings of the probate court, which we accept, show that no such transfer, to the extent it represented a permanent gift, was authorized by Beverly.

Because we conclude that the probate court's factual findings were not clearly erroneous, we also conclude that the court did not err in finding that appellant held the assets she received from Beverly in a constructive trust for the benefit of all the beneficiaries of Beverly's initial 2001 estate plan. Therefore, it was not an abuse of discretion for the court to enter judgment against appellant for the amount of $134,152.

Affirmed.


/s/ Henry William Saad
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien

-4-